# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1751V
UNPUBLISHED

| | |
|---|---|
| N.L.,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: December 6, 2021<br><br>Special Processing Unit (SPU); Dismissal; Statutory Six-Month Requirement; Insufficient Evidence; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*William Glenn Perry*, The Perry Law Firm, P.A., Greenville, NC, for Petitioner.

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION**[1]

On November 12, 2019, N.L. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim - that she suffered a left shoulder injury related to vaccination administration ("SIRVA") caused-in-fact by the influenza ("flu") vaccine she received on December 2, 2016. Petition at 1, ¶¶ 2,18.

For the reasons set forth below, I hereby DENY entitlement in this case. Petitioner has not preponderantly established that she suffered the residual effects of her alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month requirement).

---

[1] When this decision was originally filed, I advised my intent to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), Petitioner filed a timely motion to redact certain information. This decision is being posted with Petitioner's name redacted to reflect initials only. Except for those changes and this footnote, no other substantive changes have been made. This decision will be posted on the court's website with no further opportunity to move for redaction.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all Section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Relevant Procedural History**

Along with her petition, N.L. filed the medical records required under the Vaccine Act. Exhibits 1-7, ECF 1; Section 11(c). Several weeks thereafter, she filed additional documentation showing she received the flu vaccine in her left deltoid as alleged. Exhibit 8, ECF No. 8. The case was assigned to the Special Processing Unit ("SPU"). ECF No. 11.

Over the subsequent year, Respondent filed periodic status reports regarding the medical review to be performed to analyze the claim, and Petitioner worked to finalize her demand. *See,* e.g., Status Reports, ECF Nos. 16, 23. On February 12, 2021, Respondent requested additional information regarding a reference in the medical records to a possible civil action. ECF No. 24. In response, Petitioner filed an affidavit indicating that she had attempted to negotiate a settlement with the vaccine administrator prior to contacting Petitioner's counsel, but had declined the offered amount. Affidavit at ¶ 2, filed Mar. 14, 2021, ECF No. 25-1. She otherwise maintained no civil action had been filed by herself or any other party. *Id.* at ¶¶ 5-6; *see also* Petition at ¶¶ 20-21.

On May 14, 2021, Respondent filed his Rule 4(c) Report asserting that compensation was not appropriate in this case. ECF No. 28. Specifically, he maintained Petitioner has failed to preponderantly establish that she suffered the residual effects of her injury beyond January 2017 - less than two months post-vaccination. *Id.* at 7. Respondent observed from the record eleven post-vaccination medical visits during 2017 through early 2019, at which Petitioner failed to complain of any left shoulder symptoms. *Id.* at 3. Respondent thus requested that I dismiss Petitioner's claim. *Id.* at 1, 8.

On June 1, 2021, I issued an order to show cause why I should not dismiss the case on the grounds raised by Respondent. ECF No. 29. I informed Petitioner that her claim could not proceed unless she provided sufficient evidence (to date not filed) to establish that she suffered the residual effects of her injury for more than six months, or suffered an in hospital surgical intervention. *Id.* at 6; *see* Section 11(c)(1)(D).

Petitioner requested additional time to respond to the order to show cause on two occasions - July 22 and September 22, 2021. ECF Nos. 30-31. She has failed to respond by the current deadline of November 22, 2021. Order, issued Sept. 22, 2021. The matter is now ripe for resolution.

II. **Medical History**

The medical records establish that on December 28, 2016, Petitioner first reported to her primary care provider ("PCP"), Sharon Robinson, M.D., left shoulder pain and

limited range of motion ("ROM") after receiving the flu vaccine on December 2, 2016. Exhibit 3 at 1. Dr. Robison observed that Petitioner was experiencing limited ROM, specifically increased pain and difficulty raising her left arm higher than 40 degrees and passively rotating past 110 degrees. *Id.* at 5. She prescribed Naproxen, daily ROM exercises, and heat and cold therapy. *Id.* at 6.

When Petitioner returned to her PCP on January 16, 2017, she reported continued left shoulder pain, described as throbbing pain at rest and increased pain when reaching backwards. Exhibit 3 at 8. Dr. Robinson prescribed an MRI. *Id.* at 12. Performed on January 24, 2017, the MRI showed intact tendons and no rotator cuff tear, but "a small amount [of] subacromial subdeltoid bursal fluid collection." The conclusion was "[m]ild subacromial subdeltoid bursitis." *Id.*

On January 31, 2017, Petitioner was seen for her left shoulder pain, described as beginning within 24 hours of vaccination, by an orthopedist, Bruce D. Wilhelmsen, M.D. at Orthopaedics East & Sports Medicine Center ("Orthopaedics East"). Exhibit 5 at 1-2. At this visit, Dr. Wilhelmsen observed Petitioner had good ROM but "[wa]s a little bit uncomfortable at the extremes of internal rotation." *Id.* at 1. He also noted that Petitioner could raise her thumb to the same level as exhibited on her right, uninjured side and "has full abduction and forward flexion" with no pain with "resisted external rotation or abduction." *Id.* He added that the MRI showed a thin rotator cuff and "a little bit of fluid in the subacromial space" but otherwise unremarkable findings. Dr. Wilhelmsen offered to administer a cortisone injection, but Petitioner declined because she was going on a trip to Mexico that week. *Id.*

When Petitioner returned to her PCP on February 28, 2017, she mentioned her prior left shoulder pain but did not report any ongoing symptoms or seek any treatment. Exhibit 3 at 16. The visit was for her annual examination, and her only complaint set forth in this record was insomnia. *Id.* Testing and labs were performed, a psychotherapy consult was arranged for Petitioner's insomnia, Petitioner was instructed to follow-up with her gynecologist regarding a mammogram, her hormone levels, and her hair loss, and a pneumococcal vaccine was administered in Petitioner's right deltoid. *Id.* at 16-37.

During the remainder of 2017 through early 2019, Petitioner visited her PCP eight more times for treatment of a variety of conditions such as osteoporosis, high cholesterol, insomnia, an abnormal mammogram, abdominal pain, and dizziness, headache, back pain, leg cramping, and tingling in her hands after falling and hitting her head in the shower. Exhibit 3 at 38-138. Other than a notation of deltoid tendinitis under the section titled "Past Medical/Surgeries History" in the medical records from visits in 2017 and early 2018, however, there is no further mention of Petitioner's prior left shoulder pain and limited ROM. *Id.* at 35, 43, 67, 71, 81, 84, 88, 103. Even this notation of a past problem

3

is missing in medical records from visits on October 15, 2018, and April 9, 2019. *Id.* at 114-15, 128-29. Additionally, Petitioner received a pneumococcal vaccine in her left deltoid on April 3, 2018 (*id.* at 102), and the records associated with this vaccination show Petitioner's blood pressure usually was measured using her left arm. *Id.* at 41, 63, 73, 88, 111, 118. Thus, these medical records contain no indication that Petitioner continued to experience any of her earlier symptoms.

On December 19, 2018, and January 2, 2019, Petitioner visited Dr. Wilhelmsen, complaining of discomfort and swelling in her left knee. Exhibit 5 at 3. There is no mention of any ongoing left shoulder pain or limited ROM at these visits. *Id.* at 3-4.

Thus, after her initial January 2017 visit to Dr. Wilhelmsen – the month after the relevant vaccination - Petitioner did not complain of or seek treatment for any left shoulder symptoms until *more than 29 months later*, on July 1, 2019. At that visit, Petitioner was seen by Christopher Barsanti, M.D., another orthopedist at Orthopaedics East. Exhibit 5 at 5. At this time, Petitioner described a left shoulder injury after receiving the flu shot on December 2, 2016, and indicated she had hired an attorney "as she felt she was not compensated enough for her injury." *Id.* She acknowledged she "was somewhat better but still has some discomfort." *Id.* Upon examination, Petitioner exhibited near full ROM, with a painful arc. *Id.*

In August 2019, Petitioner underwent another MRI and attended three sessions of physical therapy. Exhibit 5 at 6-13. During this time, she rated her pain level as two out of ten. *Id.* at 6. She was again offered a cortisone injection but declined. *Id.* at 11. She also underwent a bone density test in August 2019 and received treatment for ankle swelling on September 26, 2019 at her PCP. Exhibit 3 at 152-60.

On March 2, 2021, Petitioner returned to Orthopaedics East complaining of bilateral shoulder pain, described as an "old problem" with onset six months ago. Exhibit 10 at 1. She was diagnosed with possible cervical radiculopathy and prescribed a Medrol Dosepak. *Id.* at 2.

### III.    Applicable Legal Standards

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–

11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

### IV. Analysis

Petitioner alleges that she suffered the residual effects of her injury for more than six months, but does not address the mildness of the symptoms she was exhibiting on January 31, 2017, or lack of treatment or even any mention of left shoulder symptoms in the medical records from February 2017 through June 2019. Petitioner did not complain of left shoulder pain again until July 1, 2019, after retaining Petitioner's counsel.

Based on the record as it currently stands, it appears that the left shoulder pain and limited ROM that Petitioner suffered post-vaccination had mostly if not entirely resolved in February 2017. And there is no record evidence that Petitioner was still experiencing any injury sequelae as of May or June 2017. Indeed, she did not experience these symptoms again until **mid-2019**, after attempting to negotiate an informal settlement with the vaccine administrator and then retaining Petitioner's counsel.

The Vaccine Act prohibits me from finding a petitioner entitled to compensation based upon the petitioner's claims alone. Section 13(a). To date, Petitioner has provided insufficient evidence to support her assertions of ongoing left shoulder symptoms from February 2017 through early 2019, from two until 32 months post-vaccination, or to link her later left shoulder pain to that suffered in late 2016 and early 2017. This inability to satisfy the six-month severity requirement is fatal to the present claim – and the present record does not permit me to conclude this requirement can be met.

### V. Conclusion

To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that she suffered the residual effects of her injury for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D).

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for failure to prosecute.  The Clerk of Court shall enter judgment accordingly.[3]

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

                                           **s/Brian H. Corcoran**
                                           Brian H. Corcoran
                                           Chief Special Master